# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Civil Action No. 4:98-cr-47-ALM-BD-2 |
| | § | |
| AURELIO MENDEZ | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Aurelio Mendez's Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) (Dkt. #1486). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds that the Motion should be **DENIED**.

## BACKGROUND

In February 1997, "following a rash of drug overdoses and deaths of juveniles and young adults in and around the Plano, Texas area," both local and federal law enforcement united to create the Plano Heroin Task Force (Dkt. #1045 at ¶ 5). On July 23, 1998, "a multi-agency drug sweep" resulted in the arrests of individuals identified in "Operation Chiva," an investigation run by the task force (Dkt. #1045 at ¶ 5). The investigation revealed that Defendant was dealing heroin (Dkt. #1045 at ¶ 5). Defendant, along with one other codefendant, was said to be responsible for "1.4663 kilograms of heroin and 35.2794 kilograms of cocaine" (Dkt. #1045 at ¶ 24). On four occasions, users died after taking heroin distributed by Defendant (Dkt #1045 at ¶ 24).

On June 24, 1998, Defendant was indicted on six counts as part of a thirty-six count Indictment that included twenty-eight codefendants (Dkt. #1045 at ¶ 1). The first count alleged that Defendant conspired to distribute heroin, in violation of 21 U.S.C. § 846, and five other counts accused Defendant of distributing heroin on various occasions between June 8, 1997, and

November 8, 1997, in violation of 21 U.S.C. § 841(a)(1) (Dkt. #1045 at ¶ 1). A jury found Defendant guilty of the conspiracy count and four of the five distribution counts (Dkt. #1045 at ¶ 4). The Court dismissed the fifth count (Count 16 of the Indictment) upon a motion filed by the Government (Dkt. # 782; Dkt. #1045 at ¶ 4). Then, the Court sentenced Defendant to five terms of life imprisonment (Dkt. #1057).

On May 27, 2025, Defendant filed this Motion to which, on June 10, 2025, the Government responded (Dkt. #1486; Dkt. #1489). Defendant filed three previous Motions under 18 U.S.C. § 3582(c)(1)(A), all of which the Court denied (Dkt. #1398 at p. 1). In one prior Motion, Defendant argued that his sentence was "extraordinarily long" and "unconstitutional," and that the jury was not properly instructed to warrant a sentencing enhancement (Dkt. #1398 at pp. 2, 7). The Court rejected those arguments (Dkt. #1398 at pp. 8–9). In the instant Motion, Defendant raises nearly identical arguments (*Compare* Dkt. #1398, *with* Dkt. #1486). Those arguments are as unpersuasive today as they were when the Court first rejected them.

## LEGAL STANDARD

### I.    18 U.S.C. § 3582(c)(1)(A)

A judgment of conviction imposing a sentence of imprisonment "'constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)). "Often referred to as 'compassionate release,' § 3582(c)(1)(A) embodies a rare exception to a conviction's finality." *United States v. Wilson*, No. 1:07-CR-236-MAC-CLS-1, 2024 WL 4267923, at *3 (E.D. Tex. Sept. 23, 2024). The statute gives the Court discretion, under certain circumstances, to reduce a defendant's term of imprisonment. *Id.* The First Step Act of 2018, in part, states:

(A)    the court, upon motion of the Director of the Bureau of Prisons

2

[("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i)     extraordinary and compelling reasons warrant such a reduction; or

(ii)    the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Pub. L. No. 115-391, 132 Stat. 5194, codified as 18 U.S.C. §3582(c)(1)(A).[1]

Instead of defining "extraordinary and compelling reasons," Congress delegated its authority to the United States Sentencing Commission ("Commission") to define the term. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *see also Wilson*, 2024 WL 4267923, at *3 (collecting cases); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024). "Although the Commission issued a policy statement prior to the passage of the [First Step Act] that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the

---

[1]   This provision is often referred to as "compassionate release." *See Wilson*, 2024 WL 4267923, at *3 (citing *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023)).

Director of the [Bureau of Prisons]" *Wilson*, 2024 WL 4267923, at *3. Accordingly, the Fifth Circuit held that the policy statement was inapplicable to motions filed by defendants on their own behalf. *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021).

This changed on November 1, 2023, when the amendments to the United States Sentencing Guidelines ("Guidelines") became effective. The Commission amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release. *Wilson*, 2024 WL 4267923, at *4 (citing U.S.S.G. § 1B1.13). Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling." U.S.S.G. § 1B1.13(b). The categories are: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the family circumstances of the defendant; (4) whether the defendant was a victim of abuse while in custody; (5) other reasons similar in gravity to those previously described; and (6) an unusually long sentence. *Id.* § 1B1.13(b)(1)–(6). Notably, rehabilitation alone is insufficient to grant a defendant's motion for compassionate release. *Jean*, 108 F.4th at 279.

## II.     Exhaustion of Administrative Remedies

Section 3582(c)(1)(A) states that the Court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. *Wilson*, 2024 WL 4267923, at *4 (citing 18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir.

4

2020)).[2] That is, a defendant may not seek relief from a court before first exhausting each administrative avenue available to the defendant. *See Wilson*, 2024 WL 4267923, at *4. "Accordingly, before seeking relief from the [C]ourt, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request." *Id.* (citing 18 U.S.C. § 3582(c)(1)(A)).

This exhaustion requirement is a "mandatory claim-processing rule," which means a defendant may not waive it himself. *Franco*, 973 F.3d at 468; *see also United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) ("Because the statutory language is mandatory . . . we must enforce this procedural rule"). However, that is not to say the exhaustion requirement can never be waived. Section 3582(c)'s exhaustion requirement is a claim-processing rule—not a jurisdictional prerequisite. *Ward v. United States*, 11 F.4th 354, 361 (5th Cir. 2021). Thus, like other claim-processing rules, "the Government must properly raise the rule before it will be enforced." *Id.* (citation modified); *see also Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (citation modified) ("A claim-processing rule may be 'mandatory' in the sense that a court must enforce the rule if a party properly raises it . . . But an objection based on a mandatory claim-processing rule may be forfeited if the party asserting the rule waits too long to raise the point."). In turn, if the Government does not invoke the exhaustion requirement, the Court will deem the matter waived for the purposes of a defendant's motion under § 3582(c)(1)(A). *See Ward*, 11 F.4th at 361; *see also United States v. McLean*, No. 21-40015, 2022 WL 44618, at *1 (5th Cir. Jan. 5,

---

[2] The exhaustion requirement applies whether the motion is styled as one for compassionate release or merely for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). *Wilson*, 2024 WL 4267923, at *4.

2022) (finding abuse of discretion where the failure to exhaust administrative remedies was raised *sua sponte*).

## III.    U.S.S.G.'s Policy Statement

### A.    Defendant's medical circumstances (U.S.S.G. § 1B1.13(b)(1))

The Sentencing Commission has enumerated four separate medical circumstances to consider in evaluating a compassionate release request. U.S.S.G. § 1B1.13(b)(1)(A)–(D).

First, whether the Defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory)." *Id.* § 1B1.13(b)(1)(A). Although a life-expectancy prognosis is not required, the provided examples make clear how serious the illness must be: "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* Fifth Circuit precedent is in accord. *See, e.g.*, *United States v. McMaryion,* No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam) ("We have said that a late-stage, terminal prognosis can constitute an extraordinary and compelling basis for a § 3582(c)(1) motion."). Generic conditions like hypertension or high cholesterol are insufficient. *See, e.g.*, *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) (finding neither hypertension nor high cholesterol to be terminal conditions); *United States v. Koons*, 455 F. Supp. 3d 285, 291–92 (W.D. La. 2020) (similar, but for high cholesterol, hypertension, and acid reflux).

Second, whether the defendant is "(i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process." U.S.S.G. § 1B1.13(b)(1)(B). This condition must be so severe that it "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* When the defendant's conditions are "'managed effectively by

6

medication' and do not 'substantially diminish the ability of the defendant to provide self-care,'" the defendant's medical condition is not an "extraordinary and compelling reason[] warranting compassionate release . . . ." *United States v. Love*, 853 F. App'x 986, 987 (5th Cir. 2021) (citation modified).

Third, whether the Defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). This subcategory focuses on the lack of resources and medical care available in some correctional facilities. Courts have found insufficient general complaints about long-term issues without medical proof of the condition or how it is deteriorating. *See, e.g.*, *United States v. Ani*, No. 21-00147, 2024 WL 50775, at *4 (D. Haw. Jan. 4, 2024) ("BOP is providing him with medical care, such as medication. There is no evidence that his medical conditions are deteriorating; that his medical conditions require long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration in health or death; or that his ability to care for himself has been seriously diminished."); *United States v. Dessaure-Outlaw*, No. CR 122-023, 2024 WL 83327, at *2 (S.D. Ga. Jan. 8, 2024) (finding general complaints about surgery complication and diabetes insufficient).

Fourth, whether the defendant is in a facility that is "at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority." U.S.S.G. § 1B1.13(b)(1)(D)(i). In addition, the defendant's "personal health risk factors and custodial status" must put them "at increased risk of suffering severe medical complications or death . . . ." *Id.* § 1B1.13(b)(1)(D)(ii). The facility

must also be unable to "adequately mitigate[]" the defendant's increased risk "in a timely manner." *Id.* § 1B1.13(b)(1)(D)(iii).

Courts have repeatedly denied motions related to the COVID-19 pandemic under this section.[3] In fact, the Fifth Circuit has "repeatedly denied relief in cases where prisoners sought compassionate release due to fear of communicable disease, even when those prisoners were in poor health." *McMaryion*, 2023 WL 4118015, at *2 (citing *Thompson*, 984 F.3d at 432–34 (5th Cir. 2021) (denying relief to a hypertensive stroke survivor concerned by COVID-19)); *see also United States v. Rodriguez*, 27 F.4th 1097, 1098–1101 (5th Cir. 2022) (denying relief where movant fearing COVID-19 suffered from heart failure). Indeed, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also Koons*, 455 F. Supp. 3d at 290) ("[A] prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP . . . .").

Further, the increased risk from an outbreak or emergency must exist at the time relief would be granted. The Sentencing Commission drafted this section using words that convey the necessary, continuous nature of the risk—"at imminent risk of being affected," "ongoing outbreak," "ongoing public health emergency," and "increased risk of suffering." U.S.S.G. § 1B1.13(b)(1)(D). As applied to COVID-19, this is no longer the case: both international and

---

[3]  *See, e.g.*, *United States v. Blair*, No. 5:19-CR-50058, 2023 WL 8223470, at *3 (W.D. Ark. Nov. 6, 2023) (finding the mere risk of COVID-19 infection was too speculative to serve as an extraordinary and compelling medical circumstance); *United States v. Williams*, No. GLR-97-353, 2023 WL 8019023, at *4 (D. M.D. Nov. 20, 2023) ("Hypertension and high BMI were not sufficient to warrant a prisoner's relief when the BOP facility's COVID-19 numbers were low, and the inmate did not show that he would not receive appropriate treatment if he were to contract the virus.").

domestic health authorities, including the World Health Organization,[4] the United States Centers for Disease Control and Prevention,[5] and the U.S. Federal Government,[6] have made clear that the COVID-19 pandemic has ended.[7] Thus, the COVID-19 pandemic no longer constitutes an "extraordinary and compelling reason" for compassionate release.

## B.    Defendant's age (U.S.S.G. § 1B1.13(b)(2))

There are three requirements for the defendant's age to constitute an extraordinary and compelling reason for release. First, the defendant must be "at least 65 years old." U.S.S.G. § 1B1.13(b)(2). Second, they must be "experiencing a serious deterioration in physical or mental health because of the aging process." *Id.* Third, the defendant must have "served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.*

## C.    Defendant's family circumstances (U.S.S.G. § 1B1.13(b)(3))

The Sentencing Commission enumerates four potential reasons for a defendant's family circumstances to constitute an extraordinary and compelling reason for release:

(A)    The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

---

[4]    *Statement on the Fifteenth Meeting of the IHR (2005) Emergency Committee on the COVID-19 Pandemic*, WORLD HEALTH ORG. (May 5, 2023), https://www.who.int/news/item/05-05-2023-statement-on-the-fifteenth-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-coronavirus-disease-(covid-19)-pandemic [https://perma.cc/MR64-X7UV].

[5]    End of the Federal COVID-19 Public Health Emergency (PHE) Declaration, Ctrs. for Disease Control & Prevention (May 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=The%20federal%20COVID-19%20PHE,share%20certain%20data%20will%20change [https://perma.cc/3S43-2VNT].

[6]    *See* National Emergencies Act, PL 118-3, April 10, 2023, 137 Stat 6.

[7]    *See also United States v. Ford*, No. 1:16-CR-19, 2023 WL 3477168, at *5 (N.D. Ind. May 15, 2023) (noting that "on May 11, 2023, the federal government ended the COVID-19 Public Health Emergency based on widespread prevention and control measures like vaccination") (quotations omitted).

(B)     The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(C)     The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D)     The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "***immediate family member***" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13(b)(3)(A)–(D).

Conclusory assertions that the defendant must now serve as the primary caretaker for a family member are insufficient. *See, e.g.*, *United States v. Newman*, No. CR 122-031, 2024 WL 812041, at *2 (S.D. Ga. Feb. 27, 2024) (finding unsupported assertions that defendant's wife was disabled and that his father required caretaking were "conclusory statements" that were "insufficient to carry his burden of persuasion"). Rather, courts require specific evidence of the defendant's need to serve as a primary caretaker. For example, the defendant must prove with medical support that the family member is incapacitated. *See United States v. Zermeno*, No. 1:16-CR-79(1), 2024 WL 4043445, at *4 (E.D. Tex. Sept. 3, 2024) (collecting cases); *United States v. Romano*, 707 F. Supp. 3d 233, 237–38 (E.D.N.Y. 2023) (finding that "[w]ithout medical evidence" of the "father's incapacitation and medical evidence detailing [defendant's] mother's inability to provide his father the necessary assistance, the Court cannot conclude that [the mother] would be an inadequate caregiver."). Statements that a family member is elderly and needs care are insufficient. *Id.* The defendant must also demonstrate why they are the only available caregiver for that family member. *United States v. Lopez,* No. 23-50404, 2024 WL 244935, at *1 (5th Cir. Jan.

10

23, 2024) (noting that the defendant "failed to explain why his other siblings could not care for his parents"). There must be a reason for the change in that family member's caretaker status. *Id.* (noting the defendant's failure to "allege the death or incapacitation of any current caretaker").

When the caretaking role relates to minors like children, additional requirements apply. For instance, the defendant must show that they would likely gain custody of the child if released. *See, e.g.*, *Zermeno*, 2024 WL 4043445, at *5 (collecting cases). In such a situation, the court should evaluate whether "release of the inmate to care for the inmate's child is the best interest of the child." U.S. Dep't of Just., Fed. Bureau of Prisons, Program Statement 5050.50 (Jan. 17, 2019)).

### D.    Victim of abuse (U.S.S.G. § 1B1.13(b)(4))

Under this section, the defendant must establish that, while in custody, they were a victim of (1) "sexual abuse involving a 'sexual act,' as defined in 18 U.S.C. § 2246(2)"; or (2) "physical abuse resulting in 'serious bodily injury,' as defined in the Commentary to §1B1.1." U.S.S.G. § 1B1.13(b)(4)(A)–(B). The abuse must have been inflicted by either a correctional officer, employee, or contractor of the BOP, or "any other individual who had custody or control over the defendant." *Id.* § 1B1.13(b)(4). Finally, the alleged misconduct "must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding . . . ." *Id.* But if such proceedings are unduly delayed or the defendant faces imminent danger, a formal adjudication is unnecessary. *Id.*

### E.    Other reasons (U.S.S.G. § 1B1.13(b)(5))

The "other reasons" category is a catchall that allows the defendant to "present[] any other circumstance or combination of circumstances" that is "similar in gravity to" the four extraordinary and compelling reasons described in U.S.S.G. § 1B1.13(b)(1)–(4). *Id.* § 1B1.13(b)(5). Although some courts invoked this provision to grant COVID-19-related compassionate release

11

motions, this reasoning no longer applies because the pandemic is over. *See supra* notes 4–7 and accompanying text.

### F.    Unusually long sentences (U.S.S.G. § 1B1.13(b)(6))

A defendant must meet three requirements under this section. First, the defendant must be serving an unusually long sentence. *See* U.S.S.G. § 1B1.13(b)(6). Second, they must have served at least ten years of that sentence. *Id.* Third, there must have been a change in law that "produce[s] a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." *Id.* This section explicitly excludes non-retroactive changes "to the Guidelines Manual." *Id.* And Fifth Circuit precedent precludes considering non-retroactive changes in *any* law. *United States v. Austin*, No. 24-30039, 2025 WL 78706, at *3 (5th Cir. Jan. 13, 2024) ("A non-retroactive change in the law cannot constitute an extraordinary and compelling reason justifying sentence reduction under § 3582(c)(1)."). Thus, in this circuit, non-retroactive changes are irrelevant.

## IV.    The 18 U.S.C. § 3553(a) Factors

Section 3553(a) directs courts to consider the following factors: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among

similar defendants; and the need to provide restitution to the victim. *Wilson*, 2024 WL 4267923, at *3 n.7 (citing 18 U.S.C. § 3553(a)).

Importantly, the district court has broad discretion in considering these factors. As the Supreme Court has explained, "the 'sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case . . . .'" *United States v. Rollins*, 53 F.4th 353, 359 (5th Cir. 2022) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Consistent with the broad discretion granted district courts, the Fifth Circuit has "regularly affirmed the denial of a compassionate-release motion . . . where the district court's weighing of the Section 3553(a) factors can independently support its judgment." *Id.* at 358 (citation omitted). In short, "compassionate release is discretionary, not mandatory, and could be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).

## V.    The Defendant's Burden

In sum, when seeking compassionate release on their own motion, the defendant must demonstrate that: (1) the defendant exhausted administrative remedies; (2) "extraordinary and compelling reasons" justify the defendant's sentence reduction or the defendant satisfies the requirements of § 3582(c)(1)(A)(ii);[8] (3) the reduction is consistent with the policy statement of U.S.S.G. § 1B1.13; and (4) the court should exercise its discretion to grant the motion after considering the § 3553(a) factors. *Wilson*, 2024 WL 4267923, at *4 (citing *United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022); *Shkambi*, 993 F.3d at 392; *United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022)).

---

[8]  18 U.S.C. § 3582(c)(1)(A)(ii) states that "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)."

## ANALYSIS

To start, the Court notes that this is not Defendant's first effort to reduce the sentence the Court previously imposed. Indeed, Defendant has attempted to secure compassionate release and sentence reduction previously, and the Court has denied those requests (*See* Dkt. #1379; Dkt. #1398; Dkt. #1401). Though Defendant had counsel, the instant Motion also appears to request the assistance of counsel (*See* Dkt. #1486 at p. 2). The Court has already appointed Counsel to review Defendant's sentence for possible avenues of reduction under 18 U.S.C. § 3582(c)(2) (Dkt. #1452). With the Courts permission, Counsel withdrew (Dkt. #1490; Dkt. #1491). In seeking permission to withdraw, Counsel stated that, after reviewing the case, "there are no non-frivolous motions or arguments that can be made supporting a sentence reduction" (Dkt. #1490 at p. 1). The Court agrees but addresses Defendant's arguments nonetheless.

### I. Defendant has met § 3582(c)(1)(A)'s exhaustion requirement.

First, the Court addresses Defendant's administrative exhaustion requirement. Defendant submitted a request for compassionate release to the warden on April 16, 2025, which the warden denied on May 8, 2025 (Dkt. #1487 pp. 42–44). Defendant then filed the current Motion on May 27, 2025 (Dkt. #1486). Defendant's request to the warden is dissimilar to the instant Motion in that Defendant's administrative request contends only that his sentence grossly disproportionate (Dkt. #1487 at p. 42). Thus, it omits any argument based on his alleged medical maladies, which Defendant includes in the Motion now before the Court (*See* Dkt. #1487 at p. 42).

Seemingly, Defendant has not completely satisfied the exhaustion requirement because his Motion raises new issues that the warden did not have the opportunity to consider. Specifically, Defendant did not exhaust his administrative remedies with respect to his medical issues (*See* Dkt. #1487 at p. 42). The Court generally would not consider such arguments. *See, e.g.*, *United*

14

*States v. Dodd*, No. 4:13-CR-182-SDJ, 2020 WL 7396527, at *2 (E.D. Tex. Dec. 17, 2020) ("In order to exhaust [his] administrative remedies, a prisoner must first present to the BOP *the same grounds warranting release* that the prisoner urges in [his] Motion."); *United States v. Cantu*, No. 7:17-CR-01046-2, 2022 WL 90853, at *1 (S.D. Tex. Jan. 5, 2022) ("[T]he exhaustion requirement applies to new arguments or grounds for compassionate release developed after an earlier request for compassionate release."). Thus, the Court would be within its province to ignore Defendant's medical issues for purposes of its analysis here.

But the exhaustion requirement is waivable. *United States v. Garrett*, 15 F.4th 335, 340 n.7 (5th Cir. 2021). As the Fifth Circuit has said, § 3582(c)(1)(A) "is a non-jurisdictional claims-processing rule and, therefore, may be waived." *Id.* At the same time, the rule is "mandatory." *Id.* "Thus, when 'properly invoked, [it] must be enforced.'" *Id.* (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017)). Where the Government does not raise the issue, the issue is not "properly invoked." *See id.* That is precisely the case here. When the Government responded to Defendant's Motion, it addressed all of Defendant's arguments, including those based on his medical ailments (*See* Dkt. #1489). In doing so, the Government did not raise the exhaustion requirement (*See* Dkt. #1489). Actually, the Government did "not dispute that [Defendant] has exhausted his administrative remedies . . . with respect to the claims raised in his current [M]otion" (Dkt. #1489 at p. 1). Accordingly, the Government has not "properly invoked" the rule. *See id.* Administrative exhaustion will not bar the Court's consideration of Defendant's full argument here. Accordingly, the Court will address Defendant's arguments in full. *See id.*; *Wilson*, 2024 WL 4267923, at *4; *Ward*, 11 F.4th at 361.

## II.    Defendant has not met § 3582(c)(1)(A)'s requirement that "extraordinary and compelling" reasons warrant a sentence reduction.

In his Motion, Defendant's argument appears to be based on a change in the law that, according to Defendant, has led to a gross disparity between his sentence and one that someone in his position would receive today (Dkt. #1486 at p. 6). Defendant also mentions in passing that "his Parkinson's disease is getting worse every each day [sic]" (Dkt. #1486 at p. 6). Defendant believes that either reason is of sufficient weight to amount to an extraordinary and compelling reason that independently warrants a sentence reduction (Dkt. #1486 at p. 6). Not so.

As set forth below, neither basis Defendant's arguments hinge on constitutes an extraordinary and compelling reason that would justify his release. In explaining why, the Court's analysis will proceed in two steps. First, the Court will address Defendant's argument concerning what he claims is an "extraordinarily long" and "unconstitutional" sentence, as it makes up the bulk of his Motion (Dkt. #1486 at p. 7). Second, the Court will consider whether Defendant's worsening Parkinson's disease constitutes an extraordinary and compelling reason.

### A.    Gross Sentencing Disparity

Defendant claims, under U.S.S.G. § 1B1.13(b)(6), that he is entitled to a sentence reduction because he received an unusually long sentence, has served at least 10 years of that sentence, and changes in the law have produced a gross disparity between the sentence that he is serving and one likely to be imposed today (Dkt. #1486 at pp. 5–6). In support of this argument, Defendant cites three United States Supreme Court decisions and the First Step Act as changes in law that yield an intolerable sentence disparity (Dkt. #1486 at p. 17). Combining these reasons with his own perception that he is rehabilitated, Defendant claims he is entitled to a reduced sentence (Dkt. #1486 at p. 18). He is not.

16

1.    **Sentencing Enhancements**

Defendant cites three United States Supreme Court decisions in an effort to argue that the law has changed in such a way that his sentence is now grossly disproportionate to that of like offenders (Dkt. #1486 at p. 7). Following the *Apprendi* rule, Defendant claims that the net sum of the case law he cites requires a jury to find the facts underlying application of the sentencing enhancements the Court applied (*See* Dkt. #1486 at p. 7) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 2350, 147 L. Ed. 2d 435 (2000)). Defendant further asserts his sentence would have been lesser had these enhancements not been applied and that this difference constitutes a gross disparity (Dkt. #1486 at p. 8).

Defendant's argument is unavailing. A § 3582(c)(1)(A) motion is not a vehicle for the legal attacks Defendant seeks to make on his sentence. *United States v. Escajeda*, 58 F.4th 184, 187 (5th Cir. 2023) ("[A] prisoner cannot use § 3582(c) to challenge the legality or the duration of his sentence; such arguments can, and hence *must*, be raised under Chapter 153."). Claims which "would have been cognizable under § 2255 . . . are not cognizable under § 3582(c)." *Id.* at 188.

Defendant's argument that the Court improperly applied a sentencing enhancement clearly challenges the legality of his sentence (*See* Dkt. #1486 at p. 7). Defendant admits as much in his Motion when he acknowledges that, "[g]enerally, motions to contest the legality of a sentence must be filed under a § 2255 Motion in the Sentencing Court" (Dkt. #1486 at p. 8). Defendant attempts to work an end run around *Escajeda*'s pronouncement by stating that, according to *Shkambi*, § 3582 allows for a prisoner "to file a post-judgment 'motion' for modification of a sentence" (Dkt. #1486 at p. 8) (citing *United States v. Shkambi*, 993 F.3d 388, 390 (5th Cir. 2021)). *Escajeda*, however, is consistent with *Shkambi* in that a prisoner may file a post-judgment motion for modification of a sentence but may not, in that same motion, challenge the

17

legality of the sentence originally imposed. *See Escajeda*, 58 F.4th at 187; *Shkambi*, 993 F.3d at 390. At bottom, to prevail, Defendant must show "extraordinary and compelling" reasons that warrant a sentence reduction. 18 U.S.C. § 3582(c)(1)(A). Legal developments are not one. *See* U.S.S.G. § 1B1.13(b)(1). Because a motion under § 3582(c)(1)(A) is not the proper mechanism to assert Defendant's legal challenges, the Court will not entertain further argument regarding sentencing enhancements. *See Escajeda*, 58 F.4th at 187.

### 2.    Sentencing Guideline Amendments

Turning now to his second argument, Defendant claims that, because the First Step Act amended the statutory minimums for his offenses and modified what constitutes a qualifying prior drug offense, a gross disparity exists between the sentence he is currently serving and one that would be imposed for the same offenses under the guidelines today (Dkt. #1486 at p. 17). Defendant argues that this gross disparity is an "extraordinary and compelling" reason that warrants sentence reduction. (Dkt. #1486 at p. 17). The law dictates otherwise.

"[A] non-retroactive change in the law is not an extraordinary or compelling reason to reduce a prisoner's sentence." *United States v. Austin*, 125 F.4th 688, 692 (5th Cir. 2025). Congress explicitly made the changes upon which Defendant relies non-retroactive. *Id.* at 691; Pub. L. No. 115-391, § 401(c), 132 Stat. at 5221 ("This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, *if a sentence for the offense has not been imposed as of such date of enactment.*" (emphasis added)); *Austin*, 125 F.4th at 691–92.  Accordingly, the Court rejects Defendant's argument on this point.

### B.    Medical Circumstances

Having determined that Defendant is not serving a disproportionate sentence that warrants reduction, the Court turns to Defendant's second alleged extraordinary and compelling reason—

his medical circumstances. In his Motion, Defendant indicates that he believes extraordinary and compelling medical reasons exist which warrant a sentence reduction (Dkt. #1486 at pp. 4–5) (citing U.S.S.G. §§ 1B1.13(b)(1)(A–C), (b)(2)). Rather than mounting a full argument based on these medical circumstances, Defendant's Motion only touches on them in passing. Specifically, his Motion mentions that his "Parkinson's disease is getting worse each every day [sic]" (Dkt. #1486 at p. 6). Defendant attaches several medical records to his Motion, but a diagnosis of Parkinson's Disease is not among them (*See* Dkt. #1487 at pp. 8–39). Without medical records proving that Defendant suffers from Parkinson's, Defendant cannot meet his burden of showing an extraordinary and compelling reason to warrant a sentence reduction (Dkt. #1487 at pp. 8–39). *See United States v. Johnson*, No. 13-00180-01, 2020 WL 7774913, at *1 (W.D. La. Dec. 30, 2020). To be sure, even if Defendant could provide evidence of his Parkinson's, he does not otherwise carry his burden to show that a reduction is in order (Dkt. #1486 at p. 6).

### 1.   Defendant's illness is not an extraordinary and compelling reason that warrants relief under U.S.S.G. § 1B1.13(b)(1)(A).

To be entitled to relief under U.S.S.G. § 1B1.13(b)(1)(A), Defendant must prove that he is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory)." Defendant cannot show that Parkinson's, while serious, rises to this level. The medical community is clear that Parkinson's disease is not a terminal illness.[9] Additionally, the medical records provided by Defendant give no "end of life trajectory" such that it ought to be considered a terminal illness under § 1B1.13(b)(1)(A) (*See* Dkt. #1487 at pp. 8–39). In sum, without

---

[9] *See, e.g.*, *End-Stage Parkinson's Disease & Risk of Death*, AM. PARKINSON DISEASE ASS'N, https://www.apdaparkinson.org/article/death-parkinsons-disease-3/ ("[Parkinson's disease] is not a fatal disease per se and end of life often occurs at an old age from another medical illness entirely"); *Parkinson's Disease*, CLEVELAND CLINIC, https://my.clevelandclinic.org/health/diseases/8525-parkinsons-disease-an-overview ("Parkinson's disease isn't fatal on its own").

more, Defendant has not carried his burden to show an extraordinary and compelling medical reason to warrant a sentence reduction under U.S.S.G. § 1B1.13(b)(1)(A).

### 2.    Defendant's illness is not an extraordinary and compelling reason that warrants relief under U.S.S.G. § 1B1.13(b)(1)(B).

Next, Defendant alternatively claims that an extraordinary and compelling reason exists to justify relief because he is "(i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process" (Dkt. #1486 at p. 4). U.S.S.G. § 1B1.13(b)(1)(B). Defendant provides no evidence that his Parkinson's "substantially diminishes [his ability] to provide self-care within the environment of a correctional facility," as required by § 1B1.13(b)(1)(B). In fact, Defendant arguably provides evidence to the contrary. Of the documents produced by Defendant, his prescription for Benztropine is the only indication of Parkinson's, even though the drug may be prescribed to treat other conditions (Dkt. #1487 at p. 13).[10] To the extent that Defendant has Parkinson's and needs medication for it, Defendant is receiving that medication while in prison (Dkt. #1487 at p. 9). If Defendant's conditions are "'managed effectively by medication' and do not 'substantially diminish the ability of the defendant to provide self-care,'" as is clear through his medication summary, then U.S.S.G. § 1B1.13(b)(1)(B) will not serve as a basis for relief (Dkt. #1487 at pp. 8–9). *Love*, 853 F. App'x at 987.

---

[10] *See Medications for Parkinson's*, AM. PARKINSON DISEASE ASS'N, https://www.apdaparkinson.org/living-with-parkinsons-disease/treatment-medication/medication/ (including Benztropine as an approved medication for Parkinson's).

### 3. Defendant's illness is not an extraordinary and compelling reason that warrants relief under U.S.S.G. § 1B1.13(b)(1)(C).

Defendant also claims that he is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which I am at risk of serious deterioration in health or death" (Dkt. #1486 at p. 5). U.S.S.G. § 1B1.13(b)(1)(C). Again, Defendant provides no proof of this, as required. *Johnson*, 2020 WL 7774913, at *1, 3. For the same reasons just mentioned, the only facts that could link the Defendant to Parkinson's disease also show that he is receiving the appropriate care for that disease (Dkt. #1487 at pp. 8–9). An extraordinary and compelling reason cannot exist under § 1B1.13(b)(1)(C).

### 4. Defendant admits to not having an extraordinary and compelling reason per U.S.S.G. § 1B1.13(b)(2), despite claiming so.

Continuing to raise issues without elaboration, Defendant claims he is "65 years old or older; . . . experiencing a serious deterioration in physical or mental health because of the aging process; and [has served] at least 10 years or 75 percent of [his] term of imprisonment, whichever is less" (Dkt. #1486 at p. 5). Defendant later admits that he is not 65 years old and provides no evidence at all of a serious deterioration in his physical or mental health (Dkt. #1486 at p. 19; Dkt. #1487 at pp. 8–39). Thus, Defendant cannot assert an extraordinary and compelling reason. *See* U.S.S.G. § 1B1.13(b)(2).

### C. Defendant does not prove the existence of an extraordinary and compelling reason per U.S.S.G. § 1B1.13(b)(5).

It is not clear to the Court what Defendant refers to by checking a box stating that "[t]here is another circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described above, are similar in gravity to the reasons described above" (Dkt. #1486 at p. 5). It could be in reference to Defendant's argument concerning his

rehabilitation (Dkt. #1486 at pp. 18–19). Defendant rightfully acknowledges that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason" (Dkt. #1486 at p. 18). *See Jean*, 108 F.4th at 279. Defendant asks that the Court consider his rehabilitation in conjunction with an extraordinary and compelling reason, however, for the reasons outlined above, no such reason exists with which to view Defendant's claimed rehabilitation. Thus, a sentence reduction is not warranted.

### III.   The factors in 18 U.S.C. § 3553(a) do not support Defendant's Motion for Sentence Reduction.

Defendant cannot succeed in his Motion without providing an extraordinary and compelling reason to warrant a sentence reduction. *See Wilson*, 2024 WL 4267923, at *4. Defendant has not provided such a reason, so the Court need not address the 3553(a) factors. However, even if Defendant could provide an extraordinary and compelling reason for a reduced sentence, the factors do not support one.

Defendant was arrested in connection with an operation run by a task force made up of both federal and local agencies responding to "a rash of drug overdoses and deaths of juveniles and young adults in and around the Plano, Texas area" (Dkt. #1045 at ¶ 5). Defendant was a primary source of 1.4663 kilograms of heroin and 35.2794 kilograms of cocaine that led to four deaths and an additional non-fatal overdose (Dkt. #1045 at ¶ 24). The incredibly serious and substantial nature of Defendant's crimes do not support compassionate release, especially when considering respect for the law and just punishment for the offense. *See Wilson*, 2024 WL 4267923, at *3 n.7 (citing 18 U.S.C. § 3553(a)).

Defendant asks that "the Court's analysis today not be identical to its earlier application of § 3553(a)," presumably because Defendant's three prior Motions were denied (Dkt. #1486 at

p. 18). Defendant, however, provides no new significant basis to argue that the Court should change its analysis, especially when considering the severity of his crimes (Dkt. #1486 at pp. 18–20). Defendant claims that he is rehabilitated, has "accepted responsibility for his actions," and is less likely to "repeat the mistakes of his youth" despite admitting to "some average infractions" while in prison and challenging the legality of his sentence (Dkt. #1486 at pp. 18–19). Defendant also contends that his continued incarceration "serves no deterrent purpose" (Dkt. #1486 at pp. 19–20). Defendant's arguments do not support a reduction of his sentence when considering the nature and circumstances of the offense, the need to reflect the seriousness of the offense, the need to protect the public, the need to provide just punishment for the offense, and the other factors laid out in 18 U.S.C. § 3553(a). *See Wilson*, 2024 WL 4267923, at *3 n.7 (citing 18 U.S.C. § 3553(a)).

Without an extraordinary and compelling reason consistent with U.S.S.G. 1B1.13(b), Defendant's Motion must be denied. *See id.* at *4. Additionally, a reduced sentence does not comport with the § 3553(a) factors. *See id.* at *3 n.7 (citing 18 U.S.C. § 3553(a)). Thus, Defendant's circumstances do not embody a "rare exception" to his conviction's finality. *Id.* at *3.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) (Dkt. #1486) is hereby **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 28th day of October, 2025.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE